**Deamus Troy CASTERLINE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–85–331–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 28, 1987.

Gene A. Garcia, Corpus Christi, Eileen C. Jeffers, Rockport, for appellant.

Thomas L. Bridges, Dist. Attys. Office, Sinton, for appellee.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

## OPINION

SEERDEN, Justice.

A jury found appellant guilty of capital murder. Punishment was assessed at life in the Texas Department of Corrections. Appellant allegedly killed David Kent Maguglin in the course of raping David's wife (Katherine), and while committing robbery and kidnapping. We affirm.

Appellant brings five grounds of error alleging that: (1) the trial court erred in denying his motion for continuance; (2) the State suppressed certain evidence favorable to appellant; and (3) the appellant was denied the right to present defensive evidence and effectively cross-examine Katherine Maguglin. All five grounds deal in some respect with appellant's attempt to establish that Katherine Maguglin was responsible for David's death. A brief summary of the facts will help place appellant's arguments in context.

Katherine Maguglin, the State's key witness, testified that appellant entered her home in the early morning hours of December 8, 1984. Katherine, her husband David, and infant son Bradley were awakened by appellant at gunpoint. Appellant, an acquaintance of the Maguglins, sought their assistance in removing his car which was stuck in the sand near the Maguglin home. Appellant forced all of the Maguglins to accompany him to that location. After David successfully freed the vehicle, appellant shot him twice with a short-barrel, .12 gauge shotgun.

Katherine further stated that appellant then took her and her son Bradley back to the Maguglin home where he sexually assaulted her. Thereafter, appellant forced her to drive them back to David's body. There, appellant pulled the body into nearby brush. Appellant then took Bradley to his vehicle, ordered Katherine to follow him in her automobile, and threatened harm to Bradley if Katherine did not obey. Appellant drove his vehicle to a nearby subdivision where he parked it and got into Katherine's automobile.

She stated that as they drove, she attempted to push appellant out of the vehicle. In an ensuing struggle, appellant's shotgun accidentally discharged and then fell out of the vehicle. When appellant attempted to retrieve the lost weapon, Katherine and Bradley escaped and drove to the Arkansas Pass Police Department.

A police officer testified that Katherine ran into the department yelling hysterically, "I killed my husband." When she calmed down, she explained that she had been raped, and that appellant had killed her husband.

The evidence further showed that after the shooting appellant went to a friend and said he had killed Maguglin in self-defense. Later that morning, as police officers surrounded the house where appellant had gone, appellant shot himself in the chest. Appellant did not testify at trial. Details of appellant's self-defense were not developed beyond the statement of his friend.

In his first ground of error, appellant contends that the trial court improperly denied his motion for continuance. He argues that the trial court abused its discretion in forcing him to trial because that action denied him the opportunity to present the testimony of a key defense witness.

Tex.Code.Crim.Proc.Ann. art. 29.06 (Vernon 1966) provides that a motion for continuance must contain the facts that are expected to be proved by the witness, and that it must appear to the court that they are material. Appellant's motion for continuance states that the absent witness, Phil Tedder, had information relating to:

(1) the whereabouts of the appellant "within minutes" of the offense, (2) appellant's state of mind, and (3) the relationship between appellant and the Maguglins. No further detail was provided in the motion.

At a hearing on appellant's motion, counsel summarized his motion as follows:

Mr. Tedder has specific and exclusive information to a particular defense, authorized under the statute, on my client's behalf in that he is aware of the whereabouts of my client at all pertinent parts relevant to the particular charge in Cause Number 1928. He has further had the special knowledge that only he could provide, and that there is no other source from which the Defendant can obtain that information, and that his testimony is not in the nature of impeachment. This is an affirmative anticipated testimony by Mr. Tedder toward a defensive issue on defense, and not for purpose of impeachment of any of the State's case. Your Honor, in a nutshell, that's the motion for the Amended Motion for Continuance.

We can find nothing in the motion or hearing to show what material facts appellant expected to prove through witness Tedder. Mere conclusions and general averments are not sufficient for the court to determine their materiality, and the motion for continuance must show on its face the materiality of the absent testimony. *Palasota v. State,* 460 S.W.2d 137 (Tex. Crim.App.1970). There was no showing in the motion or at the hearing of (1) where appellant was within minutes of the offense or how Tedder obtained this information, or how this information was material, (2) what appellant's state of mind was, how Tedder knew what appellant's state of mind was, or how appellant's state of mind was material, and (3) what Tedder knew about the relationship between appellant and the Maguglins, and how that was material to the offense. Appellant failed to provide the trial court with sufficient information to determine that Tedder's testimony would have been material. Appellant's ground of error could be overruled on this point alone, however we additionally find

that appellant has not properly preserved this matter for appellate review.

■ Appellant filed a motion for new trial alleging error in the trial court's overruling of his motion for continuance. *See Taylor v. State*, 612 S.W.2d 566 (Tex.Crim. App.1981) (motion for new trial is prerequisite to appeal trial court error in overruling motion for continuance). Appellant, however, did not set out any facts in his motion for new trial, or include a showing that the witness would actually testify to those facts. A showing that the witness would actually testify to the facts set out in the motion for new trial should be contained in the motion. *See Palasota v. State*, 460 S.W.2d at 137. It is not enough to file a sworn motion for continuance or new trial based on an absent witness. There must be some showing under oath to substantiate the allegations as to the expected testimony. Appellant did not include the required material in his motion for new trial. Appellant's first ground of error is overruled.

Appellant contends in his second ground of error that the trial court erred in allowing the prosecution of this case "in violation of pretrial orders." The gist of this ground is that the State suppressed a pistol which related directly to appellant's self-defense theory.

On April 12, 1985, appellant filed a pretrial motion for the production of evidence favorable to him. He specifically requested that the State produce "[o]ne certain weapon removed from the premises of Kent and Katy Maguglin during the early morning hours of the date in question while authorities sealed off the scene." The trial court granted the motion with the notation, "there is none."

Earlier, in February, 1985, Katherine Maguglin had told prosecutors that she had found a pistol in the top of a kitchen cabinet. This pistol was one which she apparently believed had been in the Maguglin bedroom and which she believed was missing. Appellant contends that the State "suppressed" this pistol, that it related to his self-defense claim, and that because of

this suppression the conviction should be reversed. We disagree.

■ The key elements in any suppression of evidence claim are: (1) suppression of evidence by the prosecution after a request by the defense, (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence. *Nastu v. State*, 589 S.W.2d 434 (Tex.Crim.App.1979). Assuming that appellant's request for a "certain weapon removed from the premises" is tantamount to a request for this weapon, appellant still has failed to show the favorable character of the pistol or its materiality. There is nothing in the record to show any connection between this pistol and the offense, or between the pistol and appellant's claim of self-defense. Appellant, by not showing how the pistol is material or favorable to his defense, is not entitled to reversal on this ground. Moreover, it does not appear that the existence of this weapon was in any way "suppressed" by the State. Appellant's second ground of error is overruled.

Appellant's third, fourth, and fifth grounds of error are closely related. Appellant contends that evidence of the Maguglins' faltering marriage and each spouse's romantic involvement outside their marriage should have been admitted to show that Katherine had a motive to kill David, and that the exclusion of this evidence prevented the jury from considering the truth of Katherine's statement that she had killed her husband.

The trial court refused to permit appellant to introduce evidence of Katherine's romantic relationship with a friend named Andy Deason, and also refused to allow appellant to cross-examine Katherine about extramarital affairs. The trial court specifically allowed the appellant to cross-examine Katherine about her relationship with appellant and gave appellant the opportunity to introduce evidence of a relationship between her and appellant; however, no evidence was, in fact, introduced to show a romantic relationship between Katherine and appellant.

Briefly summarized, the evidence which appellant wished to present to the jury

showed that Katherine had been romantically involved with Andy Deason during her marriage to David, and that David had been romantically involved with Lucinda Hamon. Appellant also offered evidence that the book "Sinners" was discovered in the living room of the Maguglin home. According to appellant, the book should have been admitted to show Katherine's state of mind at the time of the shooting, apparently because in the book "sexual liberties and murder were intimately connected." Appellant also offered evidence to show that Andy Deason and appellant were competitors and always trying to "out hustle" each other. From both Deason's involvement with Katherine and his "competitor" status with appellant, appellant apparently wanted to raise an inference that Katherine was romantically involved with appellant, that the troubled marriage gave Katherine a motive to commit the offense, and that Katherine was involved in the killing of her husband and therefore had a motive to testify falsely against appellant.

At the outset of our analysis, we point out that Katherine's statement, "I just killed my husband," is direct evidence of her guilt. *See generally Richardson v. State*, 600 S.W.2d 818 (Tex.Crim.App.1980); *Sloan v. State*, 515 S.W.2d 913 (Tex.Crim. App.1974). We therefore review each of appellant's grounds of error in the context of there being direct evidence of Katherine's guilt.

■ As recently noted in *Erwin v. State*, 729 S.W.2d 709 (Tex.Crim.App.1987), evidence of a third party's guilt is generally not admissible. Exceptions to this rule have evolved, and one of those exceptions is where the third party is a witness for the State. *Erwin*, 729 S.W.2d at 716. According to *Erwin*, when evidence of a third party's guilt is offered by the defendant and the third party in question is a State's witness, the evidence is admissible if the guilt of the third party is inconsistent with the defendant's guilt and the facts show

the third party was so situated that he might have committed the crime.[1]

■ Accordingly, evidence of Katherine's motive to kill David would be admissible and the issue in this case is whether the evidence offered by appellant was sufficiently relevant to establish motive. "Motive" refers to an emotion that would provoke or lead to the commission of a criminal offense. *Rodriguez v. State*, 486 S.W.2d 355 (Tex.Crim.App.1972). We draw a distinction between a person's motive to commit an offense against the victim and a person's motive to testify falsely against the defendant. The latter motive is proper grounds for any witness' impeachment. The former motive is relevant to the witness' guilt and provides an independent basis to admit evidence. Therefore, we do not rely on cases like *Chvojka v. State*, 582 S.W.2d 828 (Tex.Crim.App.1979) (exclusion of evidence that witness did not report possible jury tampering) and *Cloud v. State*, 567 S.W.2d 801 (Tex.Crim.App.1978) (exclusion of evidence that police officer may have testified against defendant to enhance his career).

Instead, we rely on cases like *Jackson v. State*, 552 S.W.2d 798 (Tex.Crim.App.1977) and *Smith v. State*, 516 S.W.2d 415 (Tex. Crim.App.1974). In both these cases, the defendant presumably wished to present evidence (1) to show that the witness could have committed the offense, and (2) to impeach the witness' testimony against the defendant. Both held proper the exclusion of evidence which would have cast some doubt on the witness' innocence. While not explicitly stated in the opinions, it appears that the offered evidence was too spurious or speculative in nature to render its exclusion erroneous.

■ In the present case, appellant did not show that Katherine's relationship with Andy Deason, or David's relationship with another woman, amounted to evidence of

---

1. The appellant did not testify, but shortly before he attempted suicide he told Rocky Pecht that he had shot David Maguglin in self-defense. If the jury had disbelieved Katherine's testimony that appellant shot David in "cold blood" and disbelieved appellant's claim of self-defense, but believed that Katherine had just killed her husband, Katherine's guilt would be inconsistent with appellant's guilt.

**212**

Katherine's emotional state which would provoke or lead to the commission of a criminal offense. Evidence of a troubled marriage alone does not establish a motive to kill. Spouses in a troubled marriage may be neither jealous nor emotional, and even if they are, that jealousy or emotion need not necessarily create a homicidal motive. It would be highly speculative to infer that marital infidelity, standing alone, created a homicidal motive. We do not consider the presence of the book "Sinners" in the Maguglin home sufficient evidence to show that the Maguglins' infidelity constituted the seed of homicidal motive. There is no showing that Katherine had read the book, and even if she had, nothing to raise that innocent act to sinister proportions. The trial court did not err in excluding appellant's evidence offered to show Katherine's motive to commit the offense, or in limiting his cross-examination of her to show her motive to commit the offense. Appellant's third and fifth grounds of error are overruled.

 A closely related question concerns the limitations placed on appellant's cross-examination of Katherine to show her lack of credibility. Appellant contended at trial that he should have been permitted to cross-examine Katherine about her involvement with Andy Deason, and her compliance with her marriage vows, to show her lack of credibility. Generally, a witness' credibility may be impeached only with evidence of the witness' bad reputation for truth and veracity, prior convictions for felonies or other crimes involving moral turpitude, or by facts which would tend to establish ill feeling, bias, motive, or animus of the witness against the accused. *Hill v. State*, 608 S.W.2d 932 (Tex.Crim.App.1980); *Bates v. State*, 587 S.W.2d 121 (Tex.Crim. App.1979). Evidence showing a witness' bias and prejudice should not be excluded even if it is not directed against the accused, if the evidence of bias and prejudice would tend to affect the witness' credibility. *Jackson v. State*, 482 S.W.2d 864 (Tex. Crim.App.1972).

We fail to see how cross-examination of Katherine about her extra-marital affair would have been proper to impeach credibility, it being a collateral matter. *See Flannery v. State*, 676 S.W.2d 369 (Tex. Crim.App.1984). Even if appellant had been allowed to cross-examine Katherine, in the absence of evidence showing that her actions were not collateral to the offense, appellant could not have contradicted her testimony. *Bates v. State*, 587 S.W.2d 121 (Tex.Crim.App.1979). Appellant's attempt to impeach Katherine by showing that she violated an oath (her marriage vows) is also collateral to the offense. Appellant's fourth ground of error is overruled.

The judgment of the trial court is AFFIRMED.