# NO. 12-22-00174-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANTHONY WAYNE BROOKS, APPELLANT* | § | *APPEAL FROM THE 2ND* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *THE STATE OF TEXAS, APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Anthony Wayne Brooks, appeals his conviction for burglary of a habitation. In three issues, he argues that the trial court erred by denying his motion for new trial without a hearing, disallowing him from questioning a witness about an instance of past conduct, and denying his motion for mistrial. We affirm.

## BACKGROUND

On September 23, 2021, Aaron Knott (accompanied by his toddler son) was placing deer feed on his leased property located in Cherokee County, Texas, when he noticed a suspicious truck parked at a house across the county road. His family was familiar with the owner and Knott knew generally that the house was unoccupied. The truck was backed up under the carport, and Knott witnessed men carrying items out of the house, including an air conditioning unit, and putting them into the truck. He also noticed a washing machine already in the back of the truck. Knott decided to approach the house in his own vehicle to investigate further. On the way there, he passed the suspicious truck traveling in the opposite direction and noticed that the driver was one of the men he saw carrying items from the house to the truck. Knott followed the truck and called 911 to provide the license plate information, but discontinued following because the truck began erratically braking and he did not wish to endanger his son.

Deputy Hunter Goff of the Cherokee County Sheriff's Department responded to the call and took photographs of the scene. He observed that a washing machine appeared to be missing, water was dripping from the hose (as though it was recently disconnected), and there were drag marks in the dust on the floor. In the living room, there was a rectangular hole in the wall, which appeared to previously hold an air conditioning unit. Elsewhere in the room, Goff found broken and removed pieces of trim torn from the wall around the air conditioner. Cabinets, drawers, and doors were open throughout the home. Goff also observed fresh tire tracks in the grass going all the way around the house. Finally, Goff and Dr. Lyle Brown, the homeowner, walked through the home and inventoried the items Brown identified as missing.

Detective Todd Driver of the Cherokee County Sheriff's Department further investigated the incident. During the investigation, Knott identified Appellant from a photographic lineup as both one of the men carrying items to the truck and the driver of the truck. Thereafter, Appellant was indicted for the offense of burglary of a habitation.[1] Appellant pleaded "not guilty," and this matter proceeded to a jury trial.

Brown testified that he acquired the house and land in 2014 and maintained insurance thereon. He stayed at the residence at least monthly and kept some food items there. The house had electricity and water service consistently since Brown purchased it and had power and water service on the day of the burglary. When he went to the property on the night of the offense, he saw that several items were missing, including a washing machine, an air conditioner, and two oil paintings. The house lacked electricity and was in disarray, with doors, drawers, and cabinets open that Brown had not left open. Brown noticed when he returned days later that the outdoor electrical meter was pulled down and hung on its hinges, which disconnected the power to the house. When he pushed the meter back up, the power returned. Brown testified that pulling down the meter took some effort and he believed it could not have fallen down spontaneously. Brown stated he did not know Appellant, and never gave him consent to enter the house or take any items.

The jury found Appellant "guilty" of the offense and imposed a sentence of twelve years' imprisonment. Thereafter, Appellant moved for a new trial, but the motion was denied by operation of law. This appeal followed.

---

[1] TEX. PENAL CODE ANN. § 30.02 (West 2023).

## HEARING ON MOTION FOR NEW TRIAL

In his first issue, Appellant alleges the trial court erred by failing to hold a hearing on his motion for new trial.

The purpose of a hearing on a motion for new trial is to decide whether the cause should be retried and to prepare a record for presenting issues on appeal in the event the motion is denied. *See Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). The opportunity to prepare a record for appellate review makes a hearing on a motion for new trial a critical stage, but such a hearing is not an absolute right. *Id*. A hearing is not required when the matters raised in the motion for new trial are determinable from the record. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). To be entitled to a hearing, the motion for new trial must raise matters which are *not* determinable from the record and establish the existence of reasonable grounds showing that the defendant could be entitled to relief. *Smith*, 286 S.W.3d at 338-39. A motion for new trial which raises matters not determinable from the record must also be supported by an affidavit specifically setting out the factual basis for the claim. *Hobbs*, 298 S.W.3d at 200.

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion and reverse only when the trial judge's decision lies outside the zone of reasonable disagreement. *Id*. Appellate review is limited to the trial judge's determination of whether the defendant raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *Smith*, 286 S.W.3d at 340. This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied; if the defendant's motion and affidavit are sufficient, a hearing on the motion is mandatory. *Id.*

Appellant's motion was not accompanied by an affidavit from either Appellant or any other person. But Appellant expressly admits that his motion for new trial "set forth an issue that was presented in part of record [sic] and thus was not required to be supported by affidavit[.]" Appellant is correct that a motion for new trial need not be verified or supported by affidavit if the allegations therein can be determined from the trial record. *See Bitterman v. State*, 195 S.W.3d 777, 779 (Tex. App.—Beaumont 2006, pet. ref'd). However, Texas law does not require a hearing on a motion for new trial if the motion does not raise matters undeterminable from the record. *Hobbs*, 298 S.W.3d at 200. Therefore, if we accept Appellant's conclusion that his

motion required no verification or affidavit in support, then he was not entitled to a hearing on the motion, and the trial court did not err in denying same. *See Smith*, 286 S.W.3d at 340.

Even assuming *arguendo* that Appellant's motion for new trial *did* raise matters not determinable from the record, and therefore met the first criterion, the lack of verification or a supporting affidavit is dispositive. "As a prerequisite to obtaining a hearing on a motion for new trial, the motion must be supported by an affidavit, either of the accused or someone else specifically showing the truth of the grounds of attack." *Crowell v. State*, 642 S.W.3d 885, 889 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (citing *Smith*, 286 S.W.3d at 339). "A trial court does not abuse its discretion if it denies a hearing on a timely motion for new trial that is not supported by affidavits." *Medina v. State*, No. 05-19-01116-CR, 2021 WL 247965, at \*1 (Tex. App.—Dallas Jan. 26, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Klapesky v. State*, 256 S.W.3d 442, 455 (Tex. App.—Austin 2008, pet. ref'd)).

In either case, because Appellant's motion did not meet the criteria that would entitle him to a hearing on his motion for new trial, the trial court did not abuse its discretion in denying Appellant's request for a hearing. *See Hobbs*, 298 S.W.3d at 200. We overrule Appellant's first issue.

### CONFRONTATION CLAUSE AND IMPEACHMENT EVIDENCE

Appellant argues in his second issue that the trial court erroneously denied his constitutional right to confrontation because it sustained the State's objection to his impeaching a witness with a specific instance of past conduct.

The Sixth Amendment guarantees a defendant the right to confront the witnesses against him. U.S. CONST. AMEND. VI; *Pointer v. Texas*, 380 U.S. 400, 406 85.S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The constitutional right of confrontation includes the right to cross-examine witnesses to attack their general credibility or to show witnesses' possible bias, self-interest, or motives to testify. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). A trial court violates a defendant's right of confrontation if it improperly limits appropriate cross-examination. *Carroll*, 916 S.W.2d at 497. But the trial court also has broad discretion to impose reasonable limits on cross-examination based on concerns about, among other matters, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant. *Irby v. State*,

327 S.W.3d 138, 145 (Tex. Crim. App. 2010). We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *Billodeau v. State*, 277 S.W.3d 34, 43 (Tex. Crim. App. 2009). Specifically, we consider the evidentiary ruling in light of what was before the trial court at the time the ruling was made, and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Rodgers v. State*, 205 S.W.3d 525, 529 (Tex. Crim. App. 2006).

Under Texas Rule of Evidence 404(a)(3), a defendant may always offer evidence of a pertinent character trait—such as truthfulness—of any witness. *See* TEX. R. EVID. 404(a)(3). But, under Rule 608, the witness's general character for truthfulness may be shown only through reputation or opinion testimony. *See* TEX. R. EVID. 608. A witness's general character for truthfulness or credibility may not be attacked by cross-examining him concerning specific prior instances of dishonesty, and the Confrontation Clause does not confer a general right to impeach the credibility of a witness through otherwise prohibited modes of cross-examination. *Hammer*, 296 S.W.3d at 562-63 (citing TEX. R. EVID. 608(b)); *Reyna v. State*, 168 S.W.3d 173, 182 (Tex. Crim. App. 2005). However, the Confrontation Clause of the Sixth Amendment may require admission of evidence that Rule 608(b) would otherwise bar. *See Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). In weighing whether evidence must be admitted under the Confrontation Clause, the trial court maintains broad discretion and should balance the probative value of the evidence sought to be introduced against potential risks of its admission, including harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Id.* at 222.

We first examine whether the disputed evidence was in fact inadmissible under Rule 608. Appellant sought to question Driver in the jury's presence about an alleged extramarital affair, in which the other party was a family member of a decedent in an open murder investigation. The State objected based on Rule 608(b); the trial court sustained the objection but permitted Appellant to question Driver in a sealed and closed hearing. Appellant does not argue that the excluded evidence would have shown Driver's possible bias, self-interest, or motive(s) to testify. Nor was the evidence related to a previous criminal conviction, such that the exception provided by Rule 609 would apply. TEX. R. EVID. 608(b), 609. Attempting to impeach a witness's truthfulness by cross-examining him regarding an extramarital affair (the facts of which were unrelated to the crime of which Appellant was accused) is precisely the type of questioning Rule

608 "explicitly disavows." *Green v. State*, No. 04-06-00733-CR, 2008 WL 441753, at *2 (Tex. App.—San Antonio Feb. 20, 2008, pet. ref'd) (mem. op., not designated for publication) (citing *Casterline v. State*, 736 S.W.2d 207, 212 (Tex. App.—Corpus Christi 1987, pet. ref'd)).

Because the evidence was inadmissible under Rule 608, we next examine whether the trial court abused its discretion in failing to apply the "Confrontation Clause exception"—that is, in determining that the probative value of the evidence did not outweigh the potential risks of its admission. Appellant states that he sought to use this evidence to attack Driver's "credibility," that is, his overall character for truthfulness. Appellant does not contend that Driver's alleged affair had any bearing on the crime of which Appellant was accused, nor any relation to any defensive theory save that a testifying law enforcement officer was generally untrustworthy. Rather, Appellant's purpose for presenting this evidence appears to be general character assassination of Driver, which Rule 608(b) prohibits. *See Hammer*, 296 S.W.3d at 563 ("Our state evidentiary rules frown on unnecessary character assassination."). Even if this evidence was admitted, it had little, if any, probative value as it was factually entirely unrelated to either the offense or any of Driver's alleged behavior in investigating the case. Disallowing interrogation that is only marginally relevant falls within the trial court's discretion in limiting cross-examination. Further, considering the nature of the alleged conduct, the potential for harassment and undue prejudice to the testifying witness was great. *Graham v. State*, No. 08-01-00291-CR, 2003 WL 1386929, at *4 (Tex. App.—El Paso Mar. 20, 2003, no pet.) (mem. op., not designated for publication) (citing *Lopez*, 18 S.W.3d at 226).

We conclude that the trial court's ruling excluding evidence about Driver's alleged extramarital affair falls well within the zone of reasonable disagreement. *See Rodgers*, 205 S.W.3d at 529. Accordingly, we overrule Appellant's second issue.

### IMPROPER JURY ARGUMENT AND MOTION FOR MISTRIAL

Appellant contends in his third issue that the trial court erred by failing to grant his motion for mistrial because the prosecutor made an improper jury argument in the State's closing argument during the guilt-innocence phase of trial.

**Standard of Review and Applicable Law**

A trial court's denial of a mistrial is reviewed for abuse of discretion, and the trial court's ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330

S.W.3d 253, 292 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the trial court's ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Mistrial is the appropriate remedy when error is so prejudicial that expenditure of further time and expense would be futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). It is a remedy intended for extreme circumstances when prejudice is incurable and less drastic alternatives have been explored. *Ocon*, 284 S.W.3d at 884.

Proper jury argument (1) summarizes the evidence, (2) makes reasonable deductions from the evidence, (3) responds to arguments of opposing counsel, or (4) pleads for law enforcement. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). A prosecuting attorney is permitted in argument to draw all inferences from the facts in evidence which are reasonable, fair and legitimate, and offered in good faith. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). Improper jury argument is generally considered non-constitutional error, and not grounds for reversal unless a substantial right is affected. *See* TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *State v. Dudley*, 223 S.W.3d 717, 728 (Tex. App.—Tyler 2007, no pet.).

To evaluate whether the trial court abused its discretion in denying a mistrial for improper jury argument, courts balance (1) the severity of the misconduct (also defined as the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011).

**Analysis**

During closing arguments in the guilt/innocence phase, counsel for Appellant argued that the jury should find Appellant guilty not of burglary of a habitation, but the lesser included offense of burglary of a building, because Brown's house lacked working electricity at the time of the offense.[2] Counsel for the State argued on rebuttal that Appellant should not be able to argue that the house was not a habitation because it lacked electricity when he pulled down the outdoor meter to shut off the electricity. Appellant objected that the State was arguing facts not

---

[2] The Texas Penal Code defines "habitation" as "a structure or vehicle that is adapted for the overnight accommodation of persons." *Id*. § 30.01 (West 2023).

in evidence, but the trial court overruled the objection. Appellant then moved for a mistrial, which the court denied.

It is apparent from the record that the disputed portion of the prosecutor's argument was based on a reasonable and fair inference drawn from the totality of facts in evidence (particularly Brown's testimony), and we find nothing to suggest that the State offered the argument in bad faith. *See Cantu*, 939 S.W.2d at 633. Further, the prosecutor's comment was focused on addressing and refuting defense counsel's argument that the lack of electricity at the house required the jury to convict Appellant only of a lesser included offense. And responding to the arguments of opposing counsel is an appropriate area of jury argument. *See Wesbrook*, 29 S.W.3d at 115. We conclude that the prosecutor did not engage in improper jury argument, and therefore, the trial court did not abuse its discretion by denying appellant's motion for mistrial.

Even assuming for argument's sake that the State's argument on this point was improper, it was not so prejudicial as to be one of those extreme circumstances which required a mistrial. Any prejudicial effect of the prosecutor's remark would have been slight, as the jury previously heard Brown testify (without objection) that the power had been functional when last he visited the home, there was no power the night of the burglary, and that human intervention would have been required to disconnect the meter. *See generally Taylor v. State*, 109 S.W.3d 443, 449 n.25 (Tex. Crim. App. 2003) (no reversible error where same evidence or argument presented elsewhere during trial without objection). And there was other, more direct record evidence supporting Appellant's conviction— an eyewitness identified Appellant as the person he saw removing items from Brown's house and driving away with those items. Moreover, lack of functioning electricity is not dispositive of a trier of fact's finding that a burglarized building was a "habitation." *See, e.g.*, *Tharp v. State*, No. 12-13-00261-CR, 2014 WL 3662027, at *3 (Tex. App.—Tyler July 23, 2014, no pet.) (mem. op., not designated for publication); *Hicks v. State*, 204 S.W.3d 505, 507 (Tex. App.—Amarillo 2006, no pet.) (citing *Blankenship v. State*, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989) (op. on reh'g)); *Hollander v. State*, No. 09-05-448 CR, 2006 WL 2623279, at *2–3 (Tex. App.—Beaumont Sept. 13, 2006, pet. ref'd) (mem. op., not designated for publication). Without the allegedly improper statement, there was still more than sufficient evidence from which the jury could find beyond a reasonable doubt that the house was adapted for the overnight accommodation of persons, and therefore find Appellant guilty of burglary of a habitation. Thus, even if the prosecutor's statement regarding the electricity

constituted improper jury argument, that argument did not impact Appellant's substantial rights and the trial court did not abuse its discretion by denying appellant's motion for mistrial. Accordingly, we overrule Appellant's third issue.

## DISPOSITION

Having overruled each of Appellant's three issues, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 31, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2023**

**NO. 12-22-00174-CR**

**ANTHONY WAYNE BROOKS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 2nd District Court

of Cherokee County, Texas (Tr.Ct.No. 21971)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*