**Opinion issued July 26, 2012**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-10-00560-CR

—————————————

## CHRISTOPHER HARCOURT BALSLEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas[1]
Trial Court Case No. CR27952

## MEMORANDUM OPINION

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Ninth District of Texas. Misc. Docket No. 10-9105 (Tex. June 21, 2010); *see also* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (authorizing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Ninth District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Appellant, Christopher Harcourt Balsley, was charged by indictment with indecency with a child.[2] The State sought enhancement of the punishment, claiming appellant was a repeat offender.[3] Appellant waived his right to a jury trial and pleaded not guilty. The trial court found appellant guilty. Appellant pleaded true to the enhancement. The trial court found the enhancement to be true, sentenced appellant to 30 years' confinement, assessed a $1,000 fine, and assessed attorney's fees at $2,500. In two issues, appellant argues that (1) the evidence was insufficient to support a conviction and (2) the trial court erred by not suppressing two videos showing his interrogation while he claimed to be in custody.

We affirm.

## Background

In 2001, appellant began dating R. Lilienthal. They were married on July 8, 2002. Lilienthal had two daughters, one of which was A.B. A.B. was eight at the time that appellant and Lilienthal married.

When they were first married, the family lived in Houston. Later, they moved to Baytown. By late 2007 or early 2008, they had lost their home. Lilienthal and A.B. moved in with Lilienthal's older daughter, who was living in some apartments located in Liberty County, Texas. In May 2008, Lilienthal and

---

[2]    TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2011).

[3]    TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2011).

2

A.B. moved into a trailer home occupied by friends of theirs. The trailer home was also located in Liberty County, Texas.

Once appellant and Lilienthal began dating, appellant and A.B. developed a close relationship, and would frequently engage in playful wrestling and tickling.

Around the time that A.B. began to develop breasts, her older sister initiated a practice of "titty flicking," where they would occasionally flick each other's breasts outside the clothing with a finger. Appellant and Lilienthal joined in initially. Lilienthal soon decided, however, that it was not appropriate for her or appellant to participate. She instructed appellant not to participate, and appellant agreed. Appellant nevertheless persisted in flicking A.B.'s breasts on occasion.

From around the time that A.B. was 12, appellant worked as a cross-country truck driver and would stay with Lilienthal and A.B. during the periods he was in town. While A.B. was 12, appellant took her on a two-and-a-half month cross-country truck-driving trip during the summer. The next summer, A.B. asked to go on another truck-driving trip with appellant, and appellant agreed. The trip was scheduled to begin on July 16, 2008.

A.B. began feeling sick that day. As a result, appellant went on the trip without A.B. Lilienthal took A.B. to the doctor, who directed them to go to the hospital. At the hospital, A.B. met R. Jones, a nurse practitioner. As Jones asked

A.B. questions for background information, A.B. revealed that appellant had been touching her inappropriately.

A police investigation was initiated based on A.B.'s explanation of what appellant had done to her. Sergeant M. Watson, an investigator for the Liberty County Sheriff's Office, was involved in the investigation and contacted appellant. Sergeant Watson asked appellant to come to the Sheriff's Office to speak about the allegations against him. Appellant agreed, but he was on the road at the time. They arranged for appellant to come to the Sherriff's Office on September 8, 2008.

Appellant came to the Sheriff's Office as agreed, and spoke with Sergeant Watson about the allegations against him. Two video recordings were taken of his meeting with Sergeant Watson. At the start of both recordings, Sergeant Watson told appellant that he was free to leave at any time. At the start of the first recording, appellant acknowledged that he was there of his own accord. Sergeant Wilson did not otherwise advise appellant of any of his rights. Appellant left the sheriff's office shortly after the second recording was taken. He was not arrested until over a year later, November 6, 2009.

At trial, A.B. testified that, on the occasions that she was alone with appellant, appellant would flick or grab one of her breasts under her clothing. He would reach down her shirt and flick her breast. Sometimes she would be wearing a bra, and sometimes she would not be wearing a bra. When she was wearing a

4

bra, appellant would sometimes put his hand under the bra or push the bra out. A.B. would push appellant away when he did this, and she would tell him to stop. Appellant would say okay. Once or twice he said he was sorry. He nevertheless persisted in flicking or grabbing one of her breasts on other occasions.

The last time that appellant flicked A.B.'s bare breast was the day they were supposed to leave for the second truck-driving trip, July 16, 2008. Lilienthal was in the kitchen of the trailer home where they were staying, and A.B. and appellant were in the living room, watching a movie. They began a tickle fight, and appellant reached under A.B.'s shirt and bra and flicked A.B.'s bare breast. A.B. pushed him away.

A.B. also testified that, over time, the nature of their tickling and wrestling began to change. He would occasionally, when they were alone, tickle under her clothes. She testified that, while she was living in the trailer home in Liberty County, appellant would put his hand under her pants and panties and twist her pubic hair. She said that it made her feel uncomfortable, but she was too afraid to say anything.

A.B. further recounted a time when she was 12 that a boy she had been "dating" broke up with her. She was upset about the break up. Appellant told her that the only boyfriend she could have was him. A.B. also testified that appellant

5

would sometimes say, "If I was your age, I would be your boyfriend." He would also occasionally refer to her as his "little sexy."

Appellant denied ever touching A.B. in a manner intended for sexual gratification or arousal. He acknowledged tickling her, wrestling with her, and flicking her breast on the outside of her clothing. He insisted, however, that all of these things were playful and not sexual. He denied playing differently with her when they were alone. He said that the only time he ever touched her bare breast were accidental touchings while tickling and wrestling. He denied ever touching or twisting her pubic hair.

Appellant denied saying he was the only boyfriend she could have. Instead, he explained that he did not want her dating at that age and told her that the only man at that time in her life would be him. He also explained that he called her sexy because A.B. had an image complex and he was trying to change that.

**Admission of Interrogation Videos**

In his second issue, appellant argues that the trial court erred by not suppressing two videos showing his interrogation while he claimed to be in custody.

**A. Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim.

6

App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).

A trial court's determination of whether the defendant was in custody presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See id.* at 526–27; *Amador*, 221 S.W.3d at 673. But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Id.* at 527; *Amador*, 221 S.W.3d at 673.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. When, as here, a trial court denies a motion to suppress without entering findings of fact or conclusions of law, we assume that the trial court made implicit findings of fact that support its ruling as long as those

7

findings are supported by the record. *Herrera*, 241 S.W.3d at 527. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

**B.     Analysis**

Appellant argues the interrogations should have been suppressed because they violated his *Miranda* rights and protections afforded to him under state law. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a) (Vernon 2005).

To safeguard against violations of the Fifth Amendment to the United States Constitution, the United States Supreme Court requires certain warning to be given to an individual prior to a custodial interrogation. *See Miranda*, 384 U.S. at 478–79, 86 S. Ct. at 1630; *Herrera*, 241 S.W.3d at 525. Similarly, article 38.22 of the Texas Code of Criminal Procedure prohibits the admission into evidence of a custodial interrogation unless certain requirements are met. TEX. CODE CRIM. PROC. ANN. art. 38.22.

As indicated, the protections under *Miranda* and article 38.22 are limited to interrogations that are custodial in nature. *Herrera*, 241 S.W.3d at 526. Custodial interrogation consists of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action

8

in any significant way." *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612; *see also Herrera*, 241 S.W.3d at 526 (applying definition of custodial interrogation in *Miranda* as definition of custodial interrogation for article 38.22).

At trial, the defendant bears the initial burden of proving that a statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526. The Court of Criminal Appeals has identified four general situations that may constitute custody: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he is not free to leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009).

There is no evidence in the record creating any suggestion that appellant was physically deprived of his freedom of action in any significant way. Accordingly, the first situation does not apply. *See id.*

At the start of both recordings, Sergeant Watson told appellant that he was free to leave at any time. At the start of the first recording, appellant acknowledged that he was there of his own accord. At trial, Sergeant Watson repeatedly testified that she never told appellant that he could not leave and that

9

she told him he could leave at any time. Appellant testified that he understood that he was free to leave at any time. Appellant left the sheriff's office shortly after the second recording was taken. He was not arrested until over a year later, November 6, 2009.

Because the uncontradicted evidence shows that Sergeant Watson never told appellant that he was not free to leave, the second situation does not apply. *See id.* Because the uncontradicted evidence shows that Sergeant Watson, in fact, told appellant he was free to leave at any time, the fourth situation does not apply. *See id.* Because appellant testified that he understood that he was free to leave at any time, the third situation does not apply. *See id.* We conclude the record supports the trial court's implicit finding that the interrogation of Appellant was non-custodial. *See id.* (holding appellant failed to establish he was in custody during telephone conversation that occurred while defendant was at station where defendant voluntarily went to station, was told officers has no warrant for his arrest, answered questions, and then went home); *Estrada v. State*, 313 S.W.3d 274, 294–95 (Tex. Crim. App. 2010) (concluding interrogation of defendant was non-custodial where police escorted defendant to station, interrogation lasted approximately 5 hours, officer told defendant he was free to leave, and defendant, in fact, left police station after giving statement).

In his brief, appellant transcribes a portion of his cross-examination of Sergeant Wilson concerning whether she had lied to appellant during the interrogation. While appellant does not identify the significance of this discussion, we do not need to consider it here. This questioning was presented after the trial court ruled on the videos' admissibility, and appellant did not subsequently re-urge his motion to suppress. Accordingly, this issue has been waived. *See Smith v. State*, 236 S.W.3d 282, 291 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding argument about being lied to during interrogation was waived because defendant did not present this ground to trial court).

We overrule appellant's second issue.

### Sufficiency of the Evidence

In his first issue, appellant argues the evidence was insufficient to support the trial court's finding of guilt.

**A.     Standard of Review**

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307,

11

319, 99 S. Ct. 2781, 2789 (1979). *See id*. at 54. Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In

12

viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.    Analysis**

Appellant was charged with indecency with a child. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2011). As it applies to him, the State was required to prove that appellant, with a child younger than 17 years of age, whether the child is of the same or opposite sex, engaged in sexual contact with the child or caused the child to engage in sexual contact. *See id.* For the purposes of this statute, "sexual contact" means, in pertinent part, "any touching by a person including touching through clothing, of the anus, breast, or any part of the genitals of a child" when "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1).

Appellant acknowledges that the evidence is sufficient to establish that A.B. was younger than 17 years of age and that he touched her breast. We add that the evidence was also sufficient to establish that he touched any part of A.B.'s genitals

13

by touching her pubic hair. *See Carmell v. State*, 963 S.W.2d 833, 837 (Tex. App.—Fort Worth 1998) *rev'd on other grounds*, 529 U.S. 513, 120 S. Ct. 1620 (2000) (holding genitals includes area covered by pubic hair for purpose of section 21.11).

Appellant denied touching A.B.'s pubic hair. On appeal, he argues A.B. had not initially reported the claim of appellant twisting her pubic hair and A.B.'s testimony concerning these instances is contradictory. These were all matters left to the finder of fact to resolve, however. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. We find no flaw in the resolution of this conflict against appellant.

Appellant argues that the State failed to establish two elements of its burden of proof. First, appellant argues that the State failed to establish that he touched her with the intent to arouse or gratify the sexual desire of any person. Second, appellant argues that the State failed to establish that any of the acts of indecency occurred in Liberty County. We disagree with both arguments.

First, the evidence was sufficient to establish that appellant touched A.B. with the intent to arouse or gratify the sexual desire of any person. As with the other essential elements of the offense, circumstantial evidence can be used to establish intent. *See Rivera-Reyes v. State*, 252 S.W.3d 781, 785 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). "[T]he requisite specific intent to arouse or

14

gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances." *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). "The intent to arouse or gratify may be inferred from conduct alone." *Scott*, 202 S.W.3d at 408.

A.B. testified that appellant repeatedly reached under her shirt and bra to flick and grab her breasts. She also testified that appellant, on more than one occasion, reached under her pants and underwear to twist her pubic hair. A.B. told appellant repeatedly not to flick or grab her bare breast. Appellant agreed each time but would eventually resume flicking or grabbing her bare breast. Lilienthal similarly repeatedly told appellant to stop flicking A.B.'s breasts. Appellant also agreed with Lilienthal that he would stop, but he never did.

To counter this evidence, appellant points to his own testimony denying that he ever touched A.B.'s pubic hair, asserting that any tickling, wrestling, or flicking of the breasts was purely innocent "horse-play," and insisting that he never thought of A.B. in a sexual way. At best, this testimony created a conflict in the evidence, and we find no flaw in the resolution of this conflict against appellant. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. We hold there was sufficient evidence of appellant's conduct, his remarks, and all surrounding circumstances to establish that appellant touched A.B. with the intent to arouse or gratify the sexual desire of any person. *See Santos v. State*, 961 S.W.2d 304, 308 (Tex. App.—Houston [1st

15

Dist.] 1997, pet. ref'd) (requisite intent to arouse and gratify sexual desire found where defendant reached under victim's blouse and grabbed her breast).

Second, there is sufficient evidence to establish that some of the acts of indecency occurred in Liberty County. A.B. specifically testified that, the day before she was supposed to go on the second truck-driving trip with appellant, they were together in the trailer home located in Liberty County. Lilienthal was in the kitchen of the trailer home where they were staying, and A.B. and appellant were in the living room, watching a movie. They began a tickle fight, and appellant reached under A.B.'s shirt and bra and flicked A.B.'s bare breast.

She also testified that, while she was living in the trailer home in Liberty County, appellant would put his hand under her pants and panties and twist her pubic hair.

Appellant again argues that the evidence is insufficient by claiming that there was contradictory evidence in the record. As we have held, contradictory evidence is a matter for the fact finder to resolve, and we find no flaw in the resolution of this conflict against appellant. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. We hold there was sufficient evidence to establish that some of the acts of indecency occurred in Liberty County.

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).